# Exhibit A

**EDELSBERG LAW, P.A.**
Scott Edelsberg (SBN 330990)
1925 Century Park East, Suite 1700
Los Angeles, California 90067
Telephone: (305) 975-3320
scott@edelsberglaw.com

*Attorneys for Plaintiff and the Putative Class*

Electronically Filed
6/17/2025 4:07 PM
Superior Court of California
County of Stanislaus
Clerk of the Court
By: Donna Benz, Deputy

$435 PAID
$1000 COMPLEX FEE PAID

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## FOR THE COUNTY OF STANISLAUS

| | |
|---|---|
| JENNIFER BOUCHER, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> MW SERVICES LTD., d/b/a WOW VEGAS, <br><br> Defendant. | Case No.   CV-25-005830 <br><br> **CLASS ACTION COMPLAINT** <br><br> JURY TRIAL DEMANDED <br><br> SONNY S. SANDHU <br> This case has been assigned to Judge _____. <br> Department __24__ , for all purposes including Trial. |

Plaintiff Jennifer Boucher ("Plaintiff"), individually and on behalf of all others similarly situated, hereby alleges the following against Defendant MW Services Limited, d/b/a WOW Vegas ("Defendant" or "WOW Vegas"), based upon, *inter alia*, the investigation made by her counsel, and based upon information and belief, except as to those allegations and experiences specifically pertaining to Plaintiff which are based upon her personal knowledge.

## NATURE OF THE CASE

1.     This case arises out of Defendant's operation of an illegal online casino in violation of California law.

2.     Defendant owns and operates WOW Vegas (https://www.wowvegas.com),  one of the most popular and profitable casino and sweepstakes gaming website on the planet.

3.     Through WOW Vegas, users can access and play thousands of popular casino games, including, *inter alia*, jackpots, slots, roulette, baccarat, and Megaways titles (the "Chance Games"). Some of these games are even hosted by live dealers in real-time, further mimicking the experience

of a physical casino.

4.      The Chance Games offered on WOW Vegas are unequivocally games of chance. Their outcomes are determined primarily, if not exclusively, by randomization—rendering them indistinguishable from the game found in traditional, brick-and-mortar casinos.

5.      To evade regulatory scrutiny and mislead consumers, WOW Vegas markets itself as a "social casino." This designation is purely cosmetic, designed to create the false impression that the platform provides benign, entertainment-only gameplay, when in reality it facilitates and profits from illegal gambling.

6.      In practice, WOW Vegas operates in a manner virtually indistinguishable from a traditional online casino. Players can purchase in-game currency, use that currency to wager on games of chance, and subsequently redeem their winnings for cash or gift cards. WOW Vegas's rapid growth and popularity are directly attributable to its realistic casino-like experience, which includes authentic gameplay, partnerships with well-known gaming studios, robust bonus programs, and fast, reliable payout systems.

7.      WOW Vegas derives its revenue primarily through the sale of in-game currency—specifically, virtual coins—which function as a de facto substitute for real money and are necessary for users to participate in games on the platform.

8.      The platform features two forms of virtual currency: "WOW Coins" and "Sweeps Coins." While WOW Coins are offered with promotional bonuses such as sign-up rewards and daily refills, ensuring continuous user engagement, they are marketed as having no real-world monetary value.

9.      However, WOW Vegas conceals the true nature of its business model. The purchase of WOW Coins is typically "bundled" with Sweeps Coins—another currency that does carry real-world value.[1]

---

[1] According to player reviews, WOW Vegas's most enticing feature is its significant bonus bundle. https://sweepskings.com/reviews/wow-vegas/ (last accessed May 22, 2025).  Upon registration, new users generally receive 250,000 WOW Coins and 5 Sweeps Coins, distributed over the first three days. https://www.mlive.com/sweepstakes/review/wow-vegas/#:~:text=WOW%20Vegas%20bonus%20offers,how%20to%20claim%20yours%20today.&te

10.     Players use Sweeps Coins to enter sweepstakes-style games, which offer the chance to win cash or gift cards.

11.     After meeting a minimal 1x playthrough requirement and collecting at least 100 Sweeps Coins, players can redeem them for cash via platforms like Skrill or Trustly. Alternatively, with a minimum of 25 Sweeps Coins, players can redeem for gift cards through Prizeout. In effect, players are wagering a valuable currency (Sweeps Coins) on games of chance in order to obtain prizes of greater value—a textbook definition of gambling.

12.     The structure and pricing of WOW Vegas's virtual currency offerings make clear that the platform's true aim is to facilitate and profit from the sale of Sweeps Coins. Despite nominal distinctions between the two types of currency, the underlying games are purely games of chance; they require little to no skill to determine the outcome.

13.     Virtual gambling is highly addictive. Moreover, under California law, gambling is strictly regulated. The state's regulatory framework mandates that such games may only be offered by licensed operators at approved physical locations. WOW Vegas's operations flout these legal requirements by providing unlicensed gambling services to California residents via the internet.

14.     Plaintiff, individually and on behalf of all other similarly situated, seeks all available remedies at law and equity, including damages, restitution, declaratory, and injunctive relief.

## **PARTIES**

15.     At all times material hereto, Plaintiff Jennifer Boucher has been a resident of Riverbank, California.

16.     Defendant is a company formed in Gibraltar and with its headquarters at Main Road, GX11 1AA, Gibraltar. MW Services Limited owns and operates a gambling website (available at https://www.wowvegas.com/) and app under the brand "Wow Vegas." MW Services conducts business within the venue of this District and throughout California generally, which website, apps and operations are not permitted and are illegal under California law.

---

xt=%F0%9F%A4%91Can%20you%20play%20for,sweeps%20coins%20for%20real%20prizes (last accessed May 22, 2025).

CLASS ACTION COMPLAINT

**JURISDICTION AND VENUE**

17.     This Court has jurisdiction over Defendant and the claims set forth below pursuant to Code of Civil Procedure § 410.10 and the California Constitution, Article VI § 10, because this case is a cause not given by statute to the other trial courts.

18.     This Court has personal jurisdiction over Defendant because, as further described below, Defendant does business and is authorized to conduct business here. Defendant sells its products to consumers in California, including to Plaintiff.

19.     Moreover, Defendant conducts business in California and actively disseminates targeted advertisements within the state with the intent of promoting and selling its products and services to consumers there. As such, Defendant does business with sufficient minimum contacts in California, and/or otherwise intentionally avails itself of the California market.

20.     Defendant has purposefully directed its activities toward this District.

21.     Defendant has purposefully availed itself of the privileges of conducting activities in this District.

22.     Defendant's claim arises out and relates to Defendant's forum-related activities.

23.     The exercise of jurisdiction over Defendant is reasonable.

24.     Upon information and belief, Defendant localizes its game for each market where it is distributed, including the United States. This localization includes changes to the language and currency presented in WOW Vegas.

25.     Upon information and belief, Defendant has sold millions of dollars of virtual items to thousands of California residents, most of which are repeat purchases by the same customers, by contracting with the customers to sell virtual coins and other goods in exchange for legal tender.

26.     WOW Vegas facilitates ongoing economic activity between thousands of California players and Defendant.

27.     Upon information and belief, Defendant directly controls whether consumers in California can complete purchases from WOW Vegas.

28.     Upon information and belief, Defendant has the capability to determine where its customers are from, including whether purchases are being made from California.

29.    Upon information and belief, Defendant has the capability to prevent California residents from completing purchases or placing wagers in WOW Vegas, but has chosen to accept those purchases and wagers from California residents. For example, other gambling applications prevent transactions from residents of states where gambling is unlawful.

30.    Upon information and belief, Defendant has taken no steps to restrict California residents' access to WOW Vegas or to restrict the ability of California residents to make purchases from WOW Vegas.

31.    Upon information and belief, Defendant distributes its WOW Vegas app (Slots WOW), in part, via the Apple app store and Google play store, both of which are headquartered in California.

32.    Upon information and belief, in order to distribute WOW Vegas via the Apple app store and Google play store, Defendant entered into a developer agreement with Apple and Google.

33.    Defendant aggressively advertises Royal Match in the United States, including in this District. Those advertisements include linear media, social media advertisements and advertisements in other mobile applications.

34.    Upon information and belief, these advertisements for WOW Vegas were designed and directed to attract consumers in the United States, including this District, to play WOW Vegas.

35.    Upon information and belief, Defendant has the capability of targeting its WOW Vegas advertisements by geography and the capability of excluding residents of California from the reach of Defendant's advertisements for WOW Vegas.

36.    Upon information and belief, Defendant partners with Meta Platforms, Inc, headquartered in California, to serve targeted online ads at users of other companies' websites, games and online services. Upon information and belief, these ads are targeted at players that Defendant identifies as potentially interested in WOW Vegas, including residents of California. Upon information and belief, Defendant utilizes unique device identifiers and Google Advertising ID and IP addresses in connection with these targeted ads. This information allows Defendant to identify the geographic location of its ad targets, including whether they are in California.

37.    Upon information and belief, Defendant has taken no steps to restrict its advertisements for WOW Vegas from reaching residents of California.

38.     Upon information and belief, in addition to Apple and Google, Defendant has entered into development agreements with Amazon for the distribution of WOW Vegas app, which has offices in this California. Upon information and belief, under each of those agreements, Defendant has accepted responsibility for the compliance of WOW Vegas with federal and state laws, including those of California.

39.     Venue is proper in this District because a substantial part of the events or omissions giving rise to the claim occurred in this District. All of Plaintiff's activities and losses in WOW Vegas occurred in this District.

40.     Plaintiff alleges, upon information and belief, that Defendant conducts professional and commercial activities in California on a substantial, continuous, and systematic basis and therefore Defendant is subject to the general jurisdiction of the courts of this state.

41.     Plaintiff further alleges, upon information and belief, that the claims asserted in this complaint arise out of or are related to each of the Defendant's professional and commercial activities within California, and therefore the Defendant is subject to the specific jurisdiction of the courts of this state.

42.     The amount in controversy exceeds the jurisdictional minimum of this Court.

## FACTUAL BACKGROUND AND COMMON ALLEGATIONS

### I.     *The Problem of Online Gambling*

43.     Gambling addiction in the United States has escalated into a significant public health crisis, fueled by the rapid expansion of online casinos and sports betting platforms, including so called "social casinos."

44.     Since the Supreme Court's 2018 decision to legalize sports betting, the number of states with legal sportsbooks has surged from 1 to 38, with total sports wagers increasing from $4.9 billion in 2017 to $121.1 billion in 2023.[2] This proliferation has been accompanied by a dramatic rise

---

[2]  https://today.ucsd.edu/story/study-reveals-surge-in-gambling-addiction-following-legalization-of-sports-betting?utm_source=chatgpt.com (last accessed May 27, 2025).

in gambling addiction cases.[3]

45.     Approximately 2.5 million adults in the U.S. suffer from severe gambling problems, while an additional five to eight million experiencing significant issues.[4] Alarmingly, individuals with gambling disorders are 15 times more likely to commit suicide than the general population.[5]

46.     Between 2018 and 2021, the Nation Council on Problem Gambling (NCPG) estimated that the risk of gambling addiction grew by 30%. NCPG has also seen significant increases in calls, texts and chats to the National Problem Gambling Helpline—roughly a 45% increase in calls between 2021 and 2022.[6]

47.     Further, internet searches for help with gambling addiction, such as "am I addicted to gambling", have cumulatively increased 23% nationally since *Murphy v. NCAA* through June 2024. This corresponds with approximately 6.5 to 7.3 million searches for gambling addiction help-seeking nationally, with 180,000 monthly searches at its peak.[7]

48.     The surge in gambling addiction is particularly pronounced among young men, with 10% exhibiting behaviors indicative of gambling addiction, compared to 3% of the general population.[8] Online platforms, including social casinos, have been identified as significant contributors to this trend. These platforms often employ addictive design features, such as near-miss

---

[3] *See id.*

[4]     https://news.harvard.edu/gazette/story/2025/01/online-gambling-is-on-the-rise-panel-says-we-need-to-act-now/#:~:text=The%20National%20Council%20on%20Problem%20Gambling%20estimates%20that%20about%202.5,of%20callers%20is%20skewing%20younger. (last accessed May 28, 2025).

[5] https://www.who.int/news-room/fact-sheets/detail/gambling#:~:text=A%20Swedish%20study%20estimated%20that,the%20general%20population%20(4) (last accessed May 28, 2025).

[6] https://www.ncpgambling.org/news/ncpg-statement-on-the-betting-on-our-future-act/ (last accessed May 28, 2025).

[7]     https://today.ucsd.edu/story/study-reveals-surge-in-gambling-addiction-following-legalization-of-sports-betting?utm_source=chatgpt.com (last accessed May 28, 2025).

[8] https://apnews.com/article/sports-betting-compulsive-gambling-addiction-d4d0b7a8465e5be0b451b115cab0fb15 (last accessed May 28, 2025).

outcomes, fake limited-time sales, and variable reinforcement, to keep users engaged.

49.    The addiction and fallout related thereto is not limited to gamblers. It has a ripple effect that negatively impacts spouses, partners, children, and employers. Moreover, despite the growing prevalence of gambling addiction, funding for treatment remains insufficient.

50.    In California, it is illegal to operate and offer online gambling casinos, including, like here, websites that offer slot machines, blackjacks, roulette, and poker. *See generally* Cal. Penal Code §§ 330 *et. seq.* In this regard, California has a fundamental and deep-rooted public policy against gambling.

**II.    *Defendant Uses Free "Social Gaming" as a Pretext for Real, Online Gambling.***

51.    WOW Vegas advertises itself as a "social casino" website to avoid gambling regulations and reassure potential players that it offers casino-style games purely for entertainment, without real-money stakes. WOW Vegas claims it is a "free-play" casino. However, this representation is false and misleading. In practice, WOW Vegas enables users to engage in real-money gambling through its system of Sweeps Coins, deceiving consumers into believing they are participating in harmless gameplay when, in fact, they are wagering something of value for the chance to win tangible prizes.

52.    The WOW Vegas platform offers a wide variety of casino-style games, including digital slot machines, blackjack, poker, roulette, and lottery-style wheels. Through these games, Defendant provides users the opportunity to win sweepstakes prizes by accumulating and redeeming so-called Sweeps Coins.

53.    Users can access WOW Vegas via its website or through mobile applications available on the Apple App Store and Google Play Store for download by users throughout the United States, including in California.

54.    Upon accessing the platform, users are presented with an array of casino-style games, prominently including slots, roulette, poker, and blackjack.

55.    Once a user selects a game, they are prompted to wager either WOW Coins or Sweeps Coins to play.

1

2

3

4

5

6

7

8

9

10

11

12



13

14

56.    In the illustration above, WOW Vegas makes it easy to switch between wagering WOW Coins and Sweeps Coins. This simple mechanism is designed to make it as convenient as possible for players to transition to gambling with real-world stakes. Players who start out having fun can quickly and effortlessly shift to risking actual money without fully appreciating the financial consequences.

57.    After selecting their game, players then place their wagers by selecting the amount of WOW Coins or Sweeps Coins they wish to stake per round or spin. Depending on the outcome of the game, players may win additional coins, functioning in the same manner as traditional gambling wagers.



28

CLASS ACTION COMPLAINT

58.     In addition to automated games, WOW Vegas also offers a "live casino" feature, where users play games like blackjack and roulette with live human dealers who are visible through webcam streams, closely mimicking the experience of a physical casino.



59.     In sum, the games of chance offered by WOW Vegas—including slots, blackjack, and roulette—constitute gambling. These games are functionally identical to those offered in traditional casinos such as those in Las Vegas.

60.     When consumers first visit the WOW Vegas platform, they are provided with a quantity of free WOW Coins. Additional WOW Coins may be obtained through promotional giveaways and other marketing efforts.

61.     Consumers also use Sweeps Coins to play games on the platform. Unlike WOW Coins, Sweeps Coins are redeemable for cash and gift cards. Upon information and belief, each Sweeps Coin is equal in value to $1 USD in prizes, rendering Sweeps Coins a proxy for real money.

62.     Plaintiff and, upon information and belief, the vast majority of players on the WOW Vegas platform regularly buy additional coin bundles when they run out of Sweeps Coins even when they already possess unused WOW Coins. The fact that players are making these repeated purchases when they have ample WOW Coins confirm that these transactions are driven entirely by the desire to obtain Sweeps Coins for real-money gambling, rather than for the WOW Coins that Defendant sells.

63.     Users may acquire Sweeps Coins through various means, including promotional

giveaways, participation in contests or daily missions, and most commonly, through the purchase of WOW Coins. The more WOW Coins a user buys, the more Sweeps Coins they receive as an alleged "bonus." In reality, Defendant uses the sale of WOW Coins as a vehicle for the sale of Sweeps Coins, misleadingly marketing the transaction to obscure the real-money nature of the exchange.



64.     Once obtained, users gamble with Sweeps Coins in the same manner as they do with WOW Coins. However, because Sweeps Coins are redeemable for real-world value, users who wager Sweeps Coins are engaging in gambling: staking something of value on an event determined predominantly by chance with the expectation of winning additional value in the form of redeemable prizes.

65.     Furthermore, Defendant imposes a "1x playthrough" requirement on bonus Sweeps Coins, mandating that players must wager an amount equal to the number of bonus Sweeps Coins they wish to withdraw before any redemption is permitted. For example, to withdraw 25 Sweeps Coins, a player must first wager at least 25 Sweeps Coins on casino-style games offered through the WOW Vegas platform. This restrictive condition significantly impairs users' ability to redeem winnings and effectively forces continued gambling activity. The playthrough requirement operates as a coercive mechanism, compelling users to risk further losses under the guise of accessing previously earned rewards. This practice is misleading, particularly when users are initially lured to the platform by representations that it is merely a "social casino" offering free-to-play entertainment. In reality, the platform's design systematically incentivizes and prolongs gambling behavior while

**Exhibit A, Page 26**

obscuring the difficulty of actually obtaining monetary rewards—underscoring the predatory nature of Defendant's operations.

66.    California Penal Code § 330b(a) holds that it is "unlawful for any person to make or to permit the making of an agreement with another person regarding any slot machine or device, by which the user of the slot machine or device, as a result of the element of hazard or chance or other unpredictable outcome, may become entitled to receive money, credit, allowance, or other thing of value or additional chance or right to use the slot machine or device, or to receive any check, slug, token, or memorandum entitling the holder to receive money, credit, allowance, or other thing of value."

67.    California Penal Code 330b(d) provides: "For purposes of this section, 'slot machine or device' means a machine, apparatus, or device that is adapted, or may readily be converted, for use in a way that, as a result of the insertion of any piece of money or coin or other object, or by any other means, the machine or device is caused to operate or may be operated, and by reason of any element of hazard or chance or of other outcome of operation unpredictable by him or her, the user may receive or become entitled to receive any piece of money, credit, allowance, or thing of value, or additional chance or right to use the slot machine or device[.]"

68.    California broadly defines "thing of value" as "any money, coin, currency, check, chip, allowance, token, credit, merchandise, property, or any representative of value." Cal. Penal Code, § 330.2.

69.    Users of WOW Vegas stake or risk something of value when playing the games of chance offered on Defendant's platform. Specifically, players use WOW Coins or Sweeps Coins to participate in various casino-style games, the outcomes of which are determined predominantly by chance rather than skill. When using Sweeps Coins, players risk these digital tokens in hopes of winning additional Sweeps Coins, which may then be redeemed for cash or other real-world prizes. If the player wins, they retain or increase the number of coins wagered; if they lose, the coins are forfeited. This dynamic is materially distinct from traditional video games, where in-game currency is expended as a fee to play, irrespective of win or loss. In contrast, WOW Vegas mirrors the fundamental mechanics of real-money gambling, in which players risk a valuable consideration for the opportunity to win additional value.

70.    While some user interaction is involved, the outcomes of WOW Vegas's games are overwhelmingly determined by chance. Games such as digital slots, roulette, and lottery-style spins rely on random number generators or similar chance-based algorithms. Upon information and belief, the results of these games are not influenced by any player skill or decision-making, but are driven entirely by software that introduces randomness. As such, the element of chance predominates in determining game outcomes.

71.    The limited degree of user interaction does not remove WOW Vegas's games from the statutory definition of a "game of chance" or "contest of chance" under California law. Games commonly recognized as gambling, such as blackjack, craps, and interactive slot machines, also incorporate some player decisions or interactivity. WOW Vegas closely resembles so-called "I-Slots" (interactive slot machines), which allow limited user choice but are still fundamentally games of chance. The presence of user interaction in WOW Vegas does not negate the dominance of chance in determining outcomes.

72.    Even players with significant experience or familiarity with casino-style games can lose repeatedly if the game's randomizing mechanism is not favorable. Conversely, novice or inexperienced users may win if the randomized outcome happens to align in their favor. This inherent unpredictability underscores that the dominant factor in the outcome of each game is chance—not skill, strategy, or experience.

73.    WOW Coins and Sweeps Coins constitute things of value under California law and other applicable gambling statutes. These coins provide players with access to services, entertainment, and the privilege of continued gameplay without charge. Sweeps Coins, in particular, function as a "representative of value" because they are redeemable for real-world prizes, including cash and gift cards.

74.    The casino-style games on WOW Vegas closely mimic the experience of traditional gambling establishments. These games feature audiovisual elements—including slot machine graphics, sounds, animations, and game mechanics—that replicate the look and feel of real-world casino games, further blurring the line between entertainment and gambling.

**III.    *Defendant Resurrects Internet Sweepstakes Café Model from Early 2000s***

75.    In the early 2000s, a widespread trend emerged in which unscrupulous operators

attempted to circumvent state gambling laws by establishing so-called "Internet cafés." These businesses—often set up in suburban strip malls—purported to sell innocuous products such as internet access or long-distance calling minutes. In reality, the purchase of those goods was merely a front for what amounted to casino-style gambling: customers received "free" sweepstakes entries with each purchase, which they could then use to play slot machine-style games on computer terminals, with the chance to win real cash prizes.

76.     Most state gambling statutes define gambling as involving three core elements: (1) consideration, (2) chance, and (3) a prize. Operators of these Internet cafés attempted to sidestep the "consideration" element by claiming that the sweepstakes entries were promotional add-ons to legitimate purchases, akin to promotional sweepstakes run by brands like large brands. But this separation was illusory; the primary and intended purpose of the transaction was to enable gambling.

77.     Courts and law enforcement agencies across the United States uniformly concluded that these so-called sweepstakes promotions were thinly veiled gambling operations, and moved to shut them down under applicable state gambling laws.

78.     In *Barber v. Jefferson Cty. Racing Ass'n, Inc.*, 960 So.2d 599 (Ala. 2006), the Alabama Supreme Court dealt a decisive blow to the Internet café defense. There, operators sold internet time while offering customers 100 "sweepstakes entries" for every dollar spent. They argued that the entries were not gambling because customers were buying a product (internet time), and had the option to request free entries by mail. The court rejected these arguments, holding that the operation constituted illegal gambling despite these superficial distinctions. See *id.* at 612.

79.     *Barber* reflects a broad consensus among courts nationwide: the use of nominal product sales or alternative free-entry routes does not shield operators from liability when the dominant purpose of the enterprise is gambling. The underlying structure—consideration exchanged for a chance to win a prize through a game of chance—remains unchanged and unlawful.

80.     WOW Vegas now attempts to revive this discredited model. Defendant will urge the Court to accept the fiction that its operations are not gambling, but rather legal "sweepstakes" entertainment. That argument is not new—it is the same tactic employed by illegal gambling outfits in the early 2000s, which courts and regulators uniformly rejected.

81.     As detailed below, WOW Vegas employs a structurally identical business model: users

ostensibly purchase "virtual coins" but receive "Sweeps Coins"—with real-world value—for use in casino-style games of chance. The inclusion of token "free" methods of entry and the marketing language around "sweepstakes" do not change the underlying legal reality. Courts have consistently found such models to be unlawful.

82.     Indeed, in *Larsen v. PTT, LLC*, 737 F. Supp. 3d 1076 (W.D. Wash. 2024), a federal court granted summary judgment against an online gaming operator whose structure mirrored WOW Vegas's.

83.     Defendant's attempt to rebrand illegal online gambling as a sweepstakes promotion is part of a familiar pattern already discredited by courts, regulators, and the public. WOW Vegas's operations are not novel—they are a modern replica of a failed and unlawful model.

### IV.     *All Purported Contracts With Defendant Are Void*

84.     There are two independent and legally sufficient grounds upon which any purported contract with Defendant is void and unenforceable.

85.     First**,** under California law, a contract is not lawful if it is "[c]ontrary to an express provision of law," or "[o]therwise contrary to good morals." Cal. Civ. Code § 1667. Contracts that involve illegal gambling fall squarely within the ambit of this rule. Courts have consistently recognized that agreements formed in connection with unlawful gambling activities are void and unenforceable as a matter of public policy.

86.     Parties cannot contractually agree to engage in conduct that is criminal or otherwise contrary to public policy. Just as a person cannot lawfully contract to engage in forced labor, sex trafficking, illicit drug sales, or other illegal conduct, neither can they enter into a valid and enforceable agreement to participate in unlawful gambling. Any purported contractual relationship between Plaintiff and Defendant—premised on participation in illegal gambling activity—is therefore void ab initio.

87.     Second**,** under California law, a business entity that conducts intrastate business without registering or maintaining good standing with the Secretary of State or compliance with the California Franchise Tax Board (FTB) may face significant legal consequences, including the automatic voiding of contracts entered into during such period of noncompliance. See Cal. Rev. & Tax Code § 23304.1(a).

88.     Specifically, § 23304.1 provides that any contract entered into by a corporation that is not qualified to do business in California, or that is suspended by the FTB, is voidable at the request of any party to the contract other than the noncompliant entity. Thus, any agreements Defendant entered into while unregistered, unlicensed, or suspended under California law are voidable at Plaintiff's election.

89.     Accordingly, Plaintiff hereby voids any purported agreement or contract between himself and Defendant. As a result, Defendant may not invoke any contractual defenses—including arbitration clauses, choice-of-law provisions, or class action waivers—because no valid or enforceable agreement exists.

## **FACTS SPECIFIC TO PLAINTIFF**

***Plaintiff Justin Boucher's Experience***

90.     Plaintiff Boucher played WOW Vegas from approximately April 2022 to June 2025 during which she made many in-game purchases of WOW Coins and Sweeps Coins.

91.     Plaintiff Boucher accessed WOW Vegas from her residence in California. Boucher received an initial allotment of WOW Coins and Sweeps Coins. After losing her initial allocation of free WOW Coins and Sweeps Coins, she began purchasing WOW Coins and Sweeps Coins from Defendant and did so from California, which Defendant accepted.

92.     Plaintiff Boucher placed all of her wagers in WOW Vegas in California.

93.     Overall, Plaintiff Boucher wagered and lost approximately $50,000.00 in real-world currency while using WOW Vegas and its games of chance, including slots. She lost the Sweeps Coins and WOW Coins she purchased from Defendant by wagering them in WOW Vegas's games of chance.

94.     By and through WOW Vegas's gambling features described above, Boucher was induced into making these purchases that she otherwise would not have made.

95.     As a result of Defendant's unfair, unlawful, and deceptive acts, Defendant was unjustly enriched.

96.     Plaintiff Boucher enjoys playing free online games and has an ongoing interest in playing a game like WOW Vegas if it were to change to be devoid of unlawful, deceptive and unfair business practices. Plaintiff Boucher therefore has an ongoing interest in WOW Vegas complying with state and federal gambling laws and consumer protection statutes.

## CLASS ALLEGATIONS

97.     Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23(a) and 23(b) on behalf of themselves and all others similarly situated defined as follows:

98.     The Class is defined as follows:

> All California residents who, during the applicable limitations period, played and lost money wagering on Defendant's online casino games.

99.     **Numerosity.** Upon information and belief, there are hundreds, if not thousands, of Class members, so joinder of all members is impracticable. The precise number of class members and their identifies are unknown to Plaintiff currently but may be ascertained from Defendant's books and records and other third-party sources.

100.    **Commonality.** There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. These common legal and factual questions, each of which may also be certified under Rule 23(c)(4), include the following:

a.   Whether the games in WOW Vegas are gambling as defined under California law;

b.   Whether Defendant engaged in the conduct alleged in the Complaint;

c.   Whether Defendant violates the statutes listed below in Counts I and II;

d.   Whether Defendant violated statutes analogous to those alleged herein applicable;

e.   Whether and how Defendant manipulates the odds in games offered in WOW Vegas;

f.   Whether Plaintiff and the other Class members were damaged by Defendant's conduct; and

g.   Whether Plaintiff and the other Class members are entitled to  restitution or other relief.

101.    **Typicality.** Plaintiff's claims are typical of the claims of the Class because they were players of WOW Vegas who made in-game purchases of coins and wagered such coins as a result of Defendant's unlawful and wrongful conduct. The factual and legal basis of Defendant's liability to Plaintiff and to the other Class members are the same, resulting in injury to the Plaintiff and to all of the other members of the Class. Plaintiff and the other members of the Class have suffered harm and damages due to Defendant's unlawful and wrongful conduct.

102.    **Adequacy.** Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the other Class members and have the financial resources to do so. Neither Plaintiff nor her counsel have any interest adverse to those of the other members of the Class.

103.    **Predominance & Superiority.** Absent a class action, most Class members would find the cost of litigating their claims to be prohibitive and would have no effective remedy. The class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication. The damages or other financial detriment suffered by Plaintiff and putative class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for members of the proposed Class to individually seek redress for Defendant's wrongful conduct.

104.    **Final Declaratory or Injunctive Relief.** Defendant has acted and failed to act on grounds generally applicable to the Plaintiff and the Class members, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members, and making injunctive or corresponding declaratory relief appropriate for the Class as a whole.

## FIRST CAUSE OF ACTION
### Unlawful & Unfair Business Practices in Violation of California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq*.
### (On behalf of Plaintiff Boucher and the Class)

105.    Plaintiff repeats, realleges, and incorporates the allegations in Paragraphs 1–104 by reference as if fully set forth herein.

106.    Plaintiff and Defendant are "persons" within the meaning of the UCL Cal. Bus. & Prof. Code § 17201.

107.    Plaintiff has standing under the UCL because she suffered an injury in fact and lost money or property as a result of Defendant's unlawful and unfair conduct.

108.    By hosting and facilitating the unlawful online gambling website at issue here, Defendant engaged in unfair competition within the meaning of Cal. Bus. & Prof. Code § 17200 by

committing unlawful and unfair business acts and practices.

109.    Slot machines have long been outlawed in California, as are other games of chance offered on Defendant's website, such as blackjack, poker, and roulette.

110.    If a gaming machine has the look and feel of a slot machine or other gambling game, accepts real money for gameplay, and rewards a win with an "additional chance or right to use the slot machine or device," the device is an illegal slot machine or gambling.

111.    Moreover, any legitimately operated casino must randomize its results, but social casinos do not randomize their results, at least with respect to the electronic forms of gambling offered on the website.  Instead, social casinos tailor "wins" and "losses" in such a way as to maximize addiction (and, in turn, revenues).

112.    As a result, Defendant cheats players out of a legitimately randomized gaming experience. Not only can players never actually win money, but their financial losses are maximized by deceptive gameplay tweaks that would never be allowed in a legitimate (*i.e.*, licensed and regulated) slot machine.

113.    The UCL prohibits acts of "unfair competition." As used in this section, "unfair competition" encompasses three distinct types of misconduct: (a) "unlawful…business acts or practices"; (b) "unfair fraudulent business acts or practices"; (c) "unfair, deceptive or misleading advertising," and (d) "any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code."

114.    Defendant's conduct as alleged herein occurred in the course of trade or commerce.

115.    As described herein, Defendant committed unlawful and unfair business acts or practices in violation of the UCL.

116.    As a result of engaging in the conduct alleged in this Complaint, Defendant has also violated the UCL's proscription against engaging in "unlawful" conduct by virtue of its violations of, *inter alia*, the following laws:

        a.    **California's Gambling Control Act (Cal. Bus. & Prof. Code §§ 19800,**
            ***et seq.***): Sections 19801 and 19850 of the Gambling Control Act provide
            that unless licensed, state law prohibits commercially operated gambling
            facilities; that no new gambling establishment may be opened except upon

affirmative vote of the electors; that all gambling operations and persons having significant involvement therein shall be licensed, registered, and regulated; and that all persons who deal, operate, carry on, conduct, maintain or expose for play any gambling game shall apply for and obtain a valid state gambling license. WOW Vegas constitutes a "gambling" because it is a game of "chance, including any gambling device…played for currency, check, credit, or any other thing of value that is not prohibited and made unlawful by statute or local ordinance." Cal. Penal Code § 337j(1). Defendant has not applied for or obtained any state gambling license, and therefore violates California's Gambling Control Act.

b. **California Penal Code § 330a**: Section 330a declares that "[e]very person, who has in his or her possession or under his or her control…or who permits to be placed, maintained, or kept in any room, space, inclosure, or building owned, leased, or occupied by him or her, or under his or her management or control, any slot or card machine, contrivance, appliance or mechanical device, upon the result of action of which money or other valuable thing is staked or hazarded, and which is operated, or played, by placing or depositing therein any coins, checks, slugs, balls, or other articles or device, or in any other manner and by means whereof, or as a result of the operation of which any merchandise, money, representative or articles of value, checks, or tokens, redeemable in or exchangeable for money or any other thing of value, is won or lost, or taken from or obtained from the machine, when the result of action or operation of the machine, contrivance, appliance, or mechanical device is dependent upon hazard or chance…is guilty of a misdemeanor." Defendant violates this section as described above.

c. **California Penal Code § 330b**: Section 330b declares that "[i]t is unlawful for any person to manufacture, repair, own, store, possess, sell, rent, lease, let on shares, lend or give away, transport, or expose for sale or lease, or to

offer to repair, sell, rent, lease, let on shares, lend or give away, or permit the operation, placement, maintenance, or keeping of, in any place, room, space, or building owned, leased, or occupied, managed, or controlled by that person, any slot machine or device, as defined in this section." As alleged, Defendant permits the operation, placement, maintenance, or keeping of a slot machine or device as defined by Penal Code § 330b(d). The software for WOW Vegas is an apparatus alone. Moreover, the game operating together with Defendant's servers are a machine, apparatus or device. The software for the game also modifies mobile phone devices into gambling devices as defined by Penal Code § 330b(d). Further, a user's mobile device is adapted by the game to create a slot machine or device. Users play the game and purchase coins from the games through hardware features of the mobile devices on which the game operates.

d. **California Penal Code § 337j(a)(1)**: Defendant violates Cal. Penal Code § 337j(a)(1) by "operat[ing], carry[ing] on, conduct[ing], maintain[ing], or expos[ing] for play" unlicensed gambling in the state.

e. **California Penal Code § 337j(a)(2)**: Defendant violates Cal. Penal Code § 337j(a)(2) by "receiv[ing], directly or indirectly, any compensation or reward or any percentage or share of the revenue, for keeping, running, or carrying on any controlled game."

f. **The Illegal Gambling Business Act of 1970 (18 U.S.C. § 1955) (the "IGBA"):** The IGBA declares it a crime to "conduct, finance, manage, supervise, direct, or own all or part of" an illegal gambling business. Defendant violates the IGBA because its business involves five or more persons, has been in continuous operation for more than thirty days, and violates California's gambling laws as alleged herein. By managing, directing, or controlling all or part of the conduct alleged herein with respect to its sale of virtual currency (in the form of coins) Defendant violates 18 U.S.C. § 1955.

g. **The Unlawful Internet Gambling Enforcement Act of 2006 (31 U.S.C. §§ 5361-5367) (the "UIGEA"):** The UIGEA makes it illegal for a "person engaged in the business of betting or wagering" to knowingly accept payments "in connection with the participation of another person in unlawful Internet gambling." 31 U.S.C. § 5633. "Unlawful Internet gambling" is placing, receiving or transmitting a bet or wager through, at least in part, the Internet where such bet or wager "is unlawful under any applicable Federal or State law in the State or Tribal lands in which the bet or wager is initiated, received, or otherwise made." 15 U.S.C. § 5362(10)(a). By accepting payment from consumers in exchange for virtual currency used wager Defendant's game of chance, WOW Vegas, Defendant has violated the UIGEA.

117.    The Illegal Slots are also illegal lotteries as defined by Cal. Penal Code § 319. Section 319 defines a lottery as any "any scheme for the disposal or distribution of property by chance, among persons who have paid or promised to pay any valuable consideration for the chance of obtaining such property." Thus, the elements of an illegal lottery under Section 319 are a prize (or "property"), distribution by chance, and consideration.

118.    Defendant's conduct described herein is also unlawful and unfair under the UCL because it violates public policy and is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers as Defendant offers illegal online gambling games.

119.    Through its unfair and deceptive acts and practices, Defendant improperly obtained money from Plaintiff and members of the Class. As such, Plaintiff requests that this Court cause Defendant to restore this money to Plaintiff and the members of the Class, and to enjoin them from continuing to violate the UCL. Otherwise, Plaintiff and members of the Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted. Accordingly, Plaintiff and the Class lack an adequate remedy at law. Moreover, Plaintiff asserts this cause of action in the alternative to its claims for damages below.

120.    As a direct and proximate cause of Defendant's deceptive and unfair trade practices, Plaintiff and other members of Class suffered  an injury in fact and/or lost money and property as

described above.

121.    Pursuant to Bus. & Prof. Code § 17203, Plaintiff Boucher seeks an injunction on behalf of the general public enjoining Defendant from continuing to engage in the conduct described above as Defendant's wrongful conduct is ongoing.

122.    Plaintiff Boucher also seeks rescission and an order requiring Defendant to make full restitution and to disgorge its ill-gotten gains wrongfully obtained from members of the Class as permitted by Bus. & Prof. Code § 17203.

123.    Additionally, Plaintiff Boucher and the Class members seek an order requiring Defendant to pay attorneys' fees pursuant to Cal. Civ. Code § 1021.5.

## SECOND CAUSE OF ACTION
### Violation of CLRA, Cal. Civ. Code § 17500, *et seq.*
### (On behalf of Plaintiff Boucher and the Class)

124.    Plaintiff repeats, realleges, and incorporates the allegations in Paragraphs 1–104 by reference as if fully set forth herein.

125.    Plaintiff brings this cause of action on behalf of himself and the Class.

126.    In light of the CLRA's underlying purpose to protect consumers and the liberal construction with which courts should interpret it, Plaintiff's purchase of in-game Defendant's product and in-game currency in the forms of as described above falls within the definition of a "goods or service" within the meaning of Cal. Civ. Code. § 1761 and 1770.

127.    Plaintiff and each member of the proposed Class are consumers as defined by Cal. Civ. Code. § 1761(d).

128.    Defendant's sale of coins to consumers were "transactions" within the meaning of Cal. Civ. Code. § 1761(e). Specifically, Defendant provides online gaming services. The purchase of coins is a transaction for accessing and using those services.

129.    Defendant violated, and continues to violate, the CLRA by, *inter alia*:

     a.    manipulating the odds of the games of chance in WOW Vegas to increase their addictive qualities and to induce players to continue playing and spending more money; and

b.  deceiving or confusing customers into believing that the gambling transactions confer or involve certain rights, remedies, or obligations (i.e., the right to recover winning and the obligation to pay for losses), when in fact any such rights, remedies or obligations are prohibited by law.

130.  Defendant's conduct violated the following provisions of Cal. Civ. Code § 1770

a.  "Representing that goods or services have . . . characteristics . . . that they do not have";

b.  "Using deceptive representations . . . in connection with . . . services"; and

c.  "Advertising goods or services with intent not to sell them as advertised."

131.  Defendant's conduct and actions are deceptive, untrue, and misleading to reasonable consumers, and will continue to mislead consumers in the future.

132.  Plaintiff and the Class relied on Defendant's advertisements, representations and/or omissions to purchase the in-game currency.

133.  As a direct and proximate result of Defendant's misconduct, Plaintiff and Class members have suffered and will continue to suffer actual damages.

134.  Defendant's wrongful conduct is ongoing and presents a continuing threat to Class members.

135.  Pursuant to § 1782(a) of the CLRA, Plaintiff's counsel has notified Defendant in writing by certified mail of the particular violations of §1770 of the CLRA and demanded that it rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendant's intent to act. If Defendant fails to respond to Plaintiff's letter or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice, as proscribed by §1782, Plaintiff will move to amend her Complaint to pursue claims for actual, punitive and statutory damages, as appropriate against Defendant.  As to this cause of action, at this time, Plaintiff seeks only injunctive relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests, individually and on behalf of all others similarly situated, the following relief:

1. For an order certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, defining the Class as requested herein, appointing Plaintiff as class representative and her counsel as class counsel;

2. Awarding Plaintiff all economic, monetary, actual, consequential, compensatory, and punitive damages available at law and to be determined by proof;

3. Awarding Plaintiff and the class members appropriate relief, including actual and statutory damages;

4. Awarding Plaintiff's reasonable attorneys' fees, costs, and other litigation expenses;

5. Awarding pre- and post-judgment interest, as allowable by law;

6. For an order enjoining Defendant from continuing to engage in the wrongful acts and practices alleged herein;

7. Declaratory and equitable relief, including restitution and disgorgement;

8. For public injunctive relief as the Court may deem proper; and

9. Awarding such further and other relief as the Court deems just, proper and equitable.

## <u>JURY DEMAND</u>

Plaintiff requests trial by jury of all claims that can be so tried.

Dated: June 17, 2025

Respectfully submitted,

By: /s/ Scott Edelsberg

**EDELSBERG LAW, P.A.**
Scott Edelsberg, Esq. (CA Bar No. 330990)
Gabriel Mandler (pro hac vice forthcoming)
1925 Century Park E #1700
Los Angeles, CA 90067
Telephone: 305-975-3320
scott@edelsberglaw.com
gabriel@edelsberglaw.com

*Counsel for Plaintiff and the Proposed Class*